**Not For Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| DEREK SAMPLE, | : | Civ. No. 15-5487 (RBK) |
| | : | |
| Petitioner, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| STEPHEN D'ILIO, *et al.*, | : | |
| | : | |
| Respondents. | : | |
| | : | |

**KUGLER, DISTRICT JUDGE:**

Before this Court is the Petition for a writ of habeas corpus of Petitioner Derek Sample ("Petitioner"), brought pursuant to 28 U.S.C. § 2254.  (ECF No. 1.)  For the reasons set forth below, Petitioner's habeas petition is DENIED, and Petitioner is DENIED a certificate of appealability.

### I.    BACKGROUND

The Superior Court of New Jersey, Appellate Division, provided the following summary of the factual background of Petitioner's case:

> A Burlington County jury found defendant Derek Sample Sr. guilty of first-degree murder, N.J.S.A. 2C:11-3a(1) or (2); felony murder, N.J.S.A. 2C:11-3a(3); first-degree armed robbery, N.J.S.A. 2C:15-1a(1); and first-degree robbery, N.J.S.A. 2C:15-1a(1).   Judge Thomas S. Smith, Jr. merged the two murder convictions and imposed a forty-five-year prison term with an eighty-five percent parole disqualifier pursuant to the No Early Release Act.  The judge also merged the two robbery convictions and imposed a fifteen-year concurrent term, again with application of the No Early Release Act.
>
> . . .

Defendant killed Pickett Durham, who was fifty-seven years old and medically fragile. Durham suffered from heart disease, diabetes, successfully treated prostate cancer, and a transplanted kidney. Just prior to Durham's death, defendant was living in an apartment with him and his niece, who was defendant's girlfriend. On October 25, 2001, defendant had been out drinking and smoking crack cocaine. He returned to the apartment hoping to steal Durham's money to purchase more crack. A verbal altercation ensued, and defendant stabbed Durham in the back with a ten-inch kitchen knife. Defendant then stole Durham's jeans, because he believed that Durham's wallet, containing the money he was looking for, was in them.

Durham called 9-1-1 and told the dispatcher that defendant had stabbed him. Paramedics and police officers from Mount Holly and Lumberton responded. After Durham was stabilized, paramedics transported him to Cooper Hospital Trauma Center. As one of the officers was leaving the scene, he noticed defendant in the back of the building attempting to hide. Defendant was arrested and brought to headquarters.

Later, a sergeant and detective awoke defendant and brought him from his cell to the interview room in order to talk with him. As the sergeant escorted defendant, he noticed that defendant was able to walk without assistance and that his eyes were not bloodshot or glassy. He did not appear to be drunk or under the influence of any substance. The officers provided defendant with a blanket and coffee.

The sergeant advised defendant of his constitutional rights and defendant signed the Miranda card waiving those rights. Defendant articulately answered all questions and admitted stabbing Durham in the back. Defendant also disclosed the location of the wallet, knife, and jeans. Defendant then agreed to have his statement audiotaped. At no time during the interview did defendant request the assistance of counsel or request that the interview be discontinued.

Meanwhile, a doctor in the hospital performed surgery on Durham to stop the bleeding, repair the holes in his colon and diaphragm, re-expand his lung, and wash his abdomen in an attempt to remove fecal material from the area. The next day, Durham experienced breathing problems which required that he be placed on a respirator. That evening, Durham suffered a heart attack. The doctors suspected that Durham had a blood clot on his lung. The hospital moved him to Intensive Care where he began to suffer from

2

> peritonitis, which was caused by the "spillage" of fecal matter from his colon into the abdominal cavity.   Durham's condition deteriorated and several days later, pursuant to his wishes, the hospital removed him from life-support.   He died within forty minutes.

*State v. Sample*, Indictment No. A-2477-04T4, 2006 WL 2882987, at *1–2 (N.J. Super. Ct. App. Div. Oct. 12, 2006).

Petitioner appealed his conviction and sentence.   The Appellate Division affirmed on October 12, 2006, but remanded to correct a typographical error in his judgment of conviction.   *Id.* The New Jersey Supreme Court denied certification on January 12, 2007.   *State v. Sample*, 915 A.2d 1050 (N.J. 2007).   Petitioner filed a petition for post-conviction relief ("PCR"), which was denied by the Superior Court on June 12, 2009.   (ECF No. 10-20.)   Petitioner appealed and the Appellate Division affirmed the denial of PCR on March 25, 2014.   *State v. Sample*, Indictment No. A-5264-11T2, 2014 WL 1175166 (N.J. Super. Ct. App. Div. Mar. 25, 2014).   The New Jersey Supreme Court denied certification on January 23, 2015.   *State v. Sample*, 105 A.3d 1101 (N.J. 2015).   In July of 2015, Petitioner filed a habeas Petition with this court raising seven grounds for habeas relief:

1. Petitioner's trial was wrongfully tainted by the admission of inflammatory and unduly prejudicial evidence, in violation of his rights to a fair trial a[s] guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution.

    A. Error in admission of hearsay statements and manner in which it was presented.

    B. Error in admission of hearsay through Lieutenant Alfred Nagle.

    C. Error in admission of other-crimes evidence.

    D. Error in admission of hearsay and conclusion by Michael Covington.

2. The trial judge's failure to instruct the jury on reckless manslaughter as a lesser-included offense of murder, and failure to instruct the jury on theft as a lesser-included offense[] to robbery was plain error.

    A. The trial judge's failure to instruct the jury on reckless manslaughter as a lesser included offense of murder was reversible plain error in light of the clear mandate from the New Jersey Supreme Court in *State v. Jenkins*, 178 N.J. 347 (2004).

    B. The trial judge's failure to instruct the jury on theft as a lesser-included offense of robbery was plain error.

3. Petitioner's right to effective assistance of counsel was violated as [a] result of his trial counsel's failure to object to evidence of prior wrongs that [were] included in Petitioner's statement to the po[li]ce.

4. Petitioner's right to effective assistance of counsel was violated as [a] result of his defense counsel's failure to protect Petitioner's right to be present at all critical phases of his trial.

5. Petitioner's right to effective assistance of counsel was violated as [a] result of his trial counsel's failure to pursue a defense of diminished capacity as supported by the expert report of Dr. Sadoff.

6. Petitioner's right to effective assistance of appellate counsel was violated.

7. The [cumulative] errors deprived Petitioner of due process.

(ECF No. 1-2.)

Respondents submitted an Answer in which they argue that Petitioner's claims are meritless. (ECF No. 10.) Petitioner submitted a traverse. (ECF No. 11.)

## II.   LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition. *See Harrington v. Richter*, 562 U.S. 86, 98 (2011); *Price v. Vincent*, 538 U.S. 634, 641 (2003). District courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)). Nevertheless, to the extent that a petitioner's constitutional claims are unexhausted, a court can nevertheless deny them on the

merits under 28 U.S.C. § 2254(b)(2).  *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).

Under these standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision.  *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008).  Furthermore, "when the relevant state-court decision on the merits . . .does not come accompanied with . . . reasons . . . [w]e hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale."  *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## III.   DISCUSSION

### A.  Ground One: Prejudicial Testimony

In Ground One Petitioner argues that the judge erred in allowing the admission of inflammatory and unduly prejudicial evidence at trial.  (ECF No. 1-2 at 1.)  While Petitioner raised this claim in his petition for PCR, he does not appear to have raised it on appeal.[1]  To the extent the claim is unexhausted, the Court denies the claim on the merits.  *See Horn, supra*, 504 F.3d at 427.

#### 1.  Testimony of Ms. Durham

Petitioner argues that the jury heard impermissible hearsay testimony from Dolores Durham, the victim's sister, who testified that the victim stated Petitioner stabbed him.  The PCR court found the statement properly admitted under New Jersey Rule of Evidence ("N.J.R.E.") 804(b)(2), as it was made impending death.  (ECF No. 10-20 at 3.)

---

[1]     On appeal from the denial of PCR, Petitioner raised this claim only in the context of ineffective assistance of counsel.  He argued that his counsel was ineffective for failing to object to the prejudicial testimony.  The Appellate Court rejected the claim as meritless, without extended explanation.  *See Sample*, 2014 WL 1175166, at *3.

Petitioner points to Ms. Durham's testimony on re-direct by the State as follows:

> Q: One thing you did indicate, there was a time when Russell was there in his bed and he was gasping and -- and talking to you.
>
> A: Yes.
>
> Q: What did he say to you?
>
> > MS. PACHECO [DEFENSE]: Objection, Your Honor, with regard to the scope of redirect.  This is with regard --
> >
> > THE COURT: Mr. Gerrow?
> >
> > MR. GERROW [STATE]: Judge, she brought it up.  I have, I believe, the right to inquire as to what he said to her.
> >
> > THE COURT: I -- I agree with you.  She -- that was in response to a direct question on cross-examination.  Objection is overruled.
>
> BY MR. GERROW:
>
> Q: What did he say to you?
>
> A: He -- I went in and I said, Russell?  And he looked around and -- very distant, and he said, Dee Dee?  And I said, Russell, I'm here.  It's okay.  And I took his hand and I said who -- what happened?  And he said (imitating gasping voice) he -- he -- he stabbed me, as he was gasping, and I said who stabbed you?  And he said (imitating gasping voice) D -- D -- Derek.  And I said Derek Sample?  And he said, (imitating gasping voice) yea -- yea -- yeah.  And he was -- I said Russell, it's okay.  Stop, because I want you to just relax.  Just relax.  I said, Russell, you concentrate on getting better.  And I was rubbing his hand and the nurse was there and I was trying to relax him and I said, I'll handle this.  He said (imitating gasping voice) o -- o -- o -- okay.  And that's the last he spoke to me.

(ECF No. 10-36 at 50–51.)

To the extent Petitioner is arguing that the state court erred in permitting Ms. Durham to provide this testimony, this argument is not proper for federal habeas review.  *See Wilson v. Vaughn*, 533 F.3d 208, 213 (3d Cir. 2008) ("[a]dmissibility of evidence is a state law issue.")

(citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)).   To rise to the level of a constitutional violation, a state court's evidentiary decision must have been so arbitrary or prejudicial that it rendered the trial fundamentally unfair, thereby violating a petitioner's due process rights.  *See Romano v. Oklahoma*, 512 U.S. 1, 12–13 (1994); *see also Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001) (an evidentiary error rises to the level of a due process violation only when "it was of such magnitude as to undermine the fundamental fairness of the entire trial").  The United States Supreme Court has "defined the category of infractions that violate fundamental fairness very narrowly."  *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal quotations omitted).

Petitioner fails to demonstrate that Ms. Durham's testimony rendered the trial fundamentally unfair.  There was ample testimony that Petitioner stabbed the victim.  In fact, Petitioner confessed to the stabbing in an oral statement to the police.  (ECF No. 10-38 at 40–41.) He then confessed a second time in a subsequently taped statement.  (ECF No. 10-5).  The jury was permitted to hear the audiotape of that statement.  (ECF No. 10-38 at 42.)

In his verbal statement, he described to Officer Frederick D'Ascentis what had occurred:

> [Petitioner] had stated . . .[a] verbal confrontation ensu[]ed.  He, Mr. Durham went into the bedroom and at that time Mr. Sample went into the kitchen, took a ten-inch knife with a black handle off of the counter, out of the drain, and went into the bedroom where Mr. Durham was sitting on the bed watching TV, and stabbed him in the left side of his back.

(ECF No. 10-38 at 40–41.)

In the transcript of the taped statement, Petitioner told the officers:

> And you know, and I got upset . . . [a]nd that's when I throw the knife where, described.  I just tossed it.  And I just walked around the building a couple of times.  And I knew the police were coming. And I felt real bad about what I did.  And that's why I didn't run, just stayed there I really didn't know what to do.  That's it.
>
> . . .

Q: And what kind of knife was it?

A: It was a c[ar]ving knife, cooking knife.

. . .

Q: About how long was it?

A: About ten inches long.

Q: You take the knife and you go into the bedroom, that's where RUSSELL is?

A: Yes

Q: When you stab him where do you stab him?

A: I don't know somewhere in his left side.

(ECF No. 10-5 at 3, 7–9.)

Based on Petitioner's own statements, the Court does not find that any possible adverse effect from Ms. Durham's testimony rendered the trial fundamentally unfair.  Because Petitioner fails to demonstrate that his constitutional rights have been violated, this claim for habeas relief is denied.[2]

## 2. **Testimony of Lieutenant Nagle**

Next, Petitioner argues that the jury heard impermissible hearsay testimony from Lieutenant Alfred Nagle ("Lieutenant Nagle"), who repeated the victim's statement that he had been robbed.  The PCR court found that the statement was properly admitted as an excited utterance under N.J.R.E. § 803(c)(2).  (ECF No. 10-20 at 3.)  Petitioner points to Lieutenant Nagle's testimony on direct examination by the State as follows:

---

[2]    Petitioner has made no reference to the Confrontation Clause here, or in his briefs before the state courts.  As such, the Court will not analyze the constitutionality of this or any of his other claims under the Confrontation Clause.

Q: And what were your observations when you  -- when you went inside?

A: I located the victim who was seated in a chair just outside the kitchen.  He was covered with blood on his back, his chest, his arms, hands.  His t-shirt, which looked like it had been cut off his body by paramedics was draped across his right thigh and was blood soaked.  He was in obvious pain.  There was a transparent patch on his back on his left side that I could see through and I could see it looked like to be a stab wound.  I did ask him what happened and he struggled as he spoke to me and he had been robbed.

. . .

Q: After Mr. Durham had indicated that to you, that he was robbed, what -- what did you then do?  What was your –

A: He -- he appeared to be in such shape that I didn't want to continue questioning him.  I just -- I said, "Okay, sir.  We'll get you some medical attention and get you some help."  But I didn't question him after that.

(ECF No. 10-37 at 29.)

Once again, to the extent Petitioner is challenging the admission of the testimony under state evidentiary rules, that claim is not cognizable in federal habeas review.  *See Estelle*, 502 U.S. at 67–68 ("it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions.").  Furthermore, the short description of what the victim told Lieutenant Nagle about the incident certainly did not deny Petitioner a fundamentally fair trial.  There was ample evidence that Petitioner committed the crimes of which he was convicted.  In his statement to the police, he stated, among other things, that he returned to the victim's home to get money.  (ECF No. 10-5 at 11.)  It was during that encounter that he stated he stabbed the victim.  (*Id.* at 3.)  Because Petitioner fails to demonstrate that the state's evidentiary ruling violated his constitutional rights, this claim for habeas relief is denied.

### 3.  **Other Crimes Evidence**

Petitioner next asserts that the jury heard impermissible other crimes evidence.  Namely, evidence of Petitioner's prior drug use and evidence that Petitioner had previously stolen money

from the victim.  (ECF No. 1-2 at 5–8.)  The PCR court found the claim procedurally barred, because it should have been raised on direct appeal.  (ECF No. 10-20 at 3.)

The record establishes that Petitioner gave an audiotaped statement to the police in which he expressed that he had been using cocaine for twelve years, and had purchased crack and smoked it on the evening of the incident.  (ECF No. 10-5 at 4–9.)  In that statement, he also expressed that two months prior to the stabbing he had taken over $300 from the victim, which he later paid back and apologized for taking.  (*Id.* at 10.)  At trial, the judge permitted the jury to hear the taped statement and provided them with a transcript of the audiotape.  (ECF No. 10-38 at 42.)

Once again, Petitioner argues that the state court misapplied its own rules of evidence.  This claim does not implicate any federal law or constitutional question.  *See Estelle*, *supra*, 502 U.S. at 67–68.  Moreover, the Court is not aware of any Supreme Court case clearly establishing that the admission of prior wrongs constitutes a violation of federal constitutional rights.  *Cf. Miller v. Glover*, No. 09-2891, 2012 WL 870728, at *10 (D.N.J. Mar. 14, 2012) (finding no Supreme Court precedent establishing same).  Furthermore, the testimony came directly from Petitioner's own statement to the police.  In that statement, he also explicitly stated that he stabbed the victim.  Therefore, Petitioner's argument that the evidence rendered the trial fundamentally unfair is without merit.  Accordingly, this claim for habeas relief must be denied.  *See Burns v. Warren*, No. 13-1929, 2016 WL 1117946, at *29 (D.N.J. Mar. 22, 2016) ("[c]laims based on errors of state law are not cognizable on federal habeas review, and federal courts cannot re-examine state court determinations on state law issues.").

### 4.  **Testimony of Michael Covington**

In his final claim in Ground One, Petitioner argues that the jury heard impermissible hearsay testimony from Michael Covington ("Covington"), a State witness, who drove Petitioner

to and from the victim's home.  Covington testified on direct examination that Petitioner returned to the vehicle with a pair of jeans, took out a wallet, and was "a little upset that there was no money in the wallet."  (ECF No. 10-37 at 76.)  Petitioner argues that the testimony was hearsay and improper speculation.  The PCR court found the testimony properly admitted under N.J.R.E. 801, because it was not offered for the truth of the matter, but to show Petitioner's state of mind.  (ECF No. 10-20 at 4.)

Like his previous claims, Petitioner's claim in this context rests on matters of state law.  *See Estelle, supra*, 502 U.S. at 67–68.  Furthermore, because there was substantial evidence of Petitioner's guilt, the testimony that Petitioner was upset about the wallet being empty did not render the trial fundamentally unfair.  Accordingly, because Petitioner fails to demonstrate that his constitutional rights were violated, this claim for habeas relief is denied.

### B.  Ground Two: Lesser-Included Offenses

In Ground Two, Petitioner argues that the trial court erred in failing to instruct the jury on lesser-included offenses of reckless manslaughter and theft.  (ECF No. 1-2 at 10.)  Petitioner raised this as a direct claim on PCR.  The PCR court denied the claim on procedural grounds.  (ECF No. 10-20.)  Petitioner then raised this as an ineffective assistance of counsel claim on appeal from the denial of PCR.[3]  The Appellate Division rejected the claim as follows:

> Sample argues that his PCR petition should have been granted because "trial counsel's failure to request, and the trial court's failure to provide, a jury charge on theft as a lesser included offense of robbery" deprived him of his "fundamental right to a fair trial[.]"  Sample also argues that the trial court should have included a jury charge on reckless manslaughter as a lesser included offense of murder.

---

[3]     Because Petitioner raises this a direct claim here, but raised it as an ineffective assistance of counsel claim in the Appellate Division, the claim does not appear exhausted.  The Court cites to the Appellate Division opinion because it is helpful in understanding Petitioner's argument.  Furthermore, to the extent the claim is unexhausted, the Court denies the claim on the merits.

Specifically, Sample contends that a theft instruction should have been given because the jury could have concluded that he did not intend to commit a theft before stabbing Durham, and that he only decided to take the wallet after the stabbing. We are not persuaded.

Robbery requires that the intent to steal be formed before or simultaneously with the use of force. *State v. Whitaker*, 200 N.J. 444, 461 (2009) (quoting *State v. Lopez*, 187 N.J. 91, 101 (2006)). Here, the evidence does not support Sample's contention; indeed, Sample's statement to the police contradicts his contention that he did not decide to take Durham's wallet until after the stabbing. The following is an excerpt from Sample's statement to police:

> Q: The purpose of you going back to the apartment tonight, you get a ride there, the guys are waiting for you outside?
>
> A: Right.
>
> Q: What was the purpose?
>
> A: I was going to get money. That is what I went for. I expected him to be [a]sleep and then I probably would have just went ahead and took the money and left back out.

At trial, Sergeant Frederick D'Ascentis testified to what Sample said in his statement, including that Sample

> went inside, thinking that Mr. Durham would be asleep, went in to go and get more money to purchase crack. When he entered the apartment, he stated that Mr. Durham was awake, to his surprise. A verbal confrontation ensu[ ]ed. He, Mr. Durham[,] went into the bedroom and at that time Mr. Sample went into the kitchen, took a ten-inch knife with a black handle off of the counter, out of the drain, and went into the bedroom where Mr. Durham was sitting on the bed watching TV, and stabbed him in the left side of his back.

Based on the testimony of Sergeant D'Ascentis and defendant's statement to police, a jury charge on theft as a lesser-included offense of robbery was not clearly indicated, and trial counsel was not ineffective for failing to request the charge.

13

As for Sample's contention that trial counsel should have requested, and the court should have given, a jury charge on reckless manslaughter as a lesser-included offense of murder, there is no evidence in the record to support such a charge, notwithstanding that the trial judge did charge the jury with the lesser included offense of aggravated manslaughter.

Aggravated manslaughter occurs when the actor recklessly causes death under circumstances manifesting extreme indifference to human life.   N.J.S.A. 2C:11–4(a)(1).   "In assessing whether a defendant has manifested an extreme indifference to human life, the focus is not the defendant's state of mind, but on the circumstances under which the defendant acted."   *State v. Wilder*, 193 N.J. 398, 409 (2008) (quoting Cannel, *New Jersey Criminal Code Annotated*, comment 2 on N.J.S.A. 2C:11–4 (2007)).   The difference between aggravated manslaughter and reckless manslaughter is in the degree of risk that death will result from the defendant's actions—a mere possibility (reckless manslaughter) or a probability (aggravated manslaughter).   *State v. Curtis*, 195 N.J. Super. 354, 364 (1984).

Given that Sample was aware of Durham's numerous health issues and the fact that he used a ten inch kitchen knife to stab Durham in the side, the trial record could not support a reasonable jury finding that death was only a mere possibility, as required for reckless manslaughter.   Thus, there was no basis for the charge and trial counsel was not ineffective for not requesting it.

*Sample*, 2014 WL 1175166, at *4–5.

Petitioner's claim appears to rest on matters of state law.   "[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief."   *Estelle*, 502 U.S. at 71–72.   However, to the extent Petitioner's argument can be construed as a federal claim, a habeas court must consider "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process . . . not merely whether the instruction is undesirable, erroneous, or even universally condemned."   *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (internal citation and quotation marks omitted).   A state trial court's refusal to give a requested jury instruction does not, by itself, create a federal habeas claim.   Instead, a habeas petitioner must

14

establish that the instructional error "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation and quotation marks omitted).  The error must have resulted in "actual prejudice." *Id.* at 637 (citation omitted).

Significantly, the Supreme Court has never recognized that an individual has a due process right to jury instructions on lesser-included offenses in non-capital cases.  *See, e.g.*, *Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) ("[o]utside of the capital context, we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error"); *Beck v. Alabama*, 447 U.S. 625, 627 (1980) (holding it unconstitutional to impose a sentence of death "when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense").

The facts reveal that Petitioner was not deprived of a fair trial by the omission of a jury charge on theft.  The transcript of the audiotape reveals that Petitioner explicitly told the police that he returned to the victim's home "to get money."  (ECF No. 10-5 at 11.)  Further, Sergeant D'Ascentis testified that Petitioner explained in his oral statement to the police that he returned to the victim's home with the intension of getting money to buy more crack.  (ECF No. 10-38 at 40.)  It was during that encounter that Petitioner took a knife from the kitchen and stabbed the victim.  Under N.J. Stat. Ann. § 2C:15-1, robbery is defined as follows:

> a. A person is guilty of robbery if, in the course of committing a theft, he:
>
> (1) Inflicts bodily injury or uses force upon another; or
>
> (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
>
> (3) Commits or threatens immediately to commit any crime of the first or second degree.

> An act shall be deemed to be included in the phrase "in the course
> of committing a theft" if it occurs in an attempt to commit theft or
> in immediate flight after the attempt or commission.

Based on Petitioner's own statements—that he returned to the victim's home for the express purpose of getting money, and it was during that encounter that he stabbed the victim—the Court is satisfied that the trial court did not err in failing to *sue sponte* charge the jury on theft. While it may have benefited Petitioner to have an instruction on theft, the Court finds that the failure to do so does not rise to the level of a constitutional violation.

Similarly, the failure to instruct the jury on a lesser-included offense of reckless manslaughter did not violate Petitioner's due process rights. The Court finds the analysis of the Appellate Division instructive. As noted by the Appellate Division, under New Jersey law, "[t]he difference between aggravated manslaughter and reckless manslaughter is in the degree of risk that death will result from the defendant's actions—a mere possibility (reckless manslaughter) or a probability (aggravated manslaughter)." *Sample*, 2014 WL 1175166, at *4–5. The record reveals that Petitioner took a ten-inch knife to stab the victim, and having lived with the victim he was likely aware of the victim's myriad health issues. Consequently, there was no rational basis for the jury to convict on reckless manslaughter, as suggested by Petitioner. Accordingly, because Petitioner fails to demonstrate that his constitutional rights were violated, this claim is denied.

### C.  Ground Three through Five: Ineffective Assistance of Counsel

In Grounds Three, Four and Five, Petitioner argues that his trial counsel was ineffective. The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's

assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  *Id.* at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 687–88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Id.* at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness."  *Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014).

Second, a petitioner must establish that counsel's "deficient performance prejudiced the defense so as to deprive the defendant of a fair trial."  *Strickland*, 466 U.S. at 669.  To establish prejudice, the defendant must show that "there is a reasonable probability that the result of trial would have been different absent the deficient act or omission."  *Id.* at 1083.  On habeas review, it is not enough that a federal judge would have found counsel ineffective.  The judge must find that the state court's resolution of the issue was unreasonable, a higher standard.  *Harrington v. Richter,* 562 U.S. 86, 101 (2011).

### 1.  Ground Three: Other Crimes Evidence

Petitioner argues that trial counsel was ineffective in failing to seek redactions to Petitioner's audiotaped statement to the police.  (ECF No. 1-2 at 19.)  He argues that he was prejudiced by the statements which indicated he was a drug user, and had previously taken money from the victim.  He also argues that he was prejudiced by testimony that he was familiar with one of the sergeant's involved in the case, because it indicated he had a prior criminal history.  (*Id.* at

19.)  The Appellate Division, in affirming the denial of PCR, rejected this claim stating his contention was "wholly meritless.  *R.* 2:11–3(e)(2)."[4]  *Sample*, 2014 WL 1175166, at *3.

On direct examination by the State, Sergeant Mastrangelo testified that after he arrived at the scene, he observed an individual standing in the dark alongside the building where the victim had been stabbed.  (ECF No. 10-37 at 43.)  The Sergeant explained that he recognized the individual, but could not place where he was from.  He then testified that Petitioner stated: "Strang, you know me.  It's Derek, Derek Sample."  (ECF No. 10-37 at 44.)

Petitioner has not proven that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *See Strickland, supra*, 466 U.S. at 694.  Petitioner confessed to the crime in a lengthy and detailed statement to the police, which was played for the jury.  Therefore, even had the prior wrongs been redacted, and had counsel objected to the testimony of the Sergeant, it is not reasonably probable that the outcome of the trial would have been different.  Because the Appellate Division's application of *Strickland* was not unreasonable, this claim for habeas relief is denied.

### 2.  **Ground Four: Right to be Present at Charge Conference**

In Ground Four Petitioner asserts that his counsel was ineffective in failing to protect his right to be present at every critical phase of the trial.  (ECF 1-2 at 20.)  Petitioner explains that his attorney waived his appearance at the charge conference.  He argues that the waiver prejudiced him because he would have requested that the judge charge the jury on reckless manslaughter and

---

[4]      Petitioner raised this as a direct claim before the PCR court.  The PCR Court procedurally barred the claim and found it meritless.  (ECF No. 10-20 at 5.)  The court there explained that under "*State v. Ramos*, [217 N.J. Super. 530, 538 (App. Div. 1987)], an officer's comment that he knew the defendant did not prejudice the defendant.")  (*Id.*)  The PCR decision is instructive, insofar as it demonstrates that under New Jersey law, Petitioner cannot establish that he was prejudiced by his counsel's failure to object to the sergeant's testimony.

theft.  (*Id.* at 22.)  The Appellate Division, in affirming the denial of PCR, rejected the claim as meritless without further explanation.[5]  *Sample*, 2014 WL 1175166, at *3.

The right to be present at every critical stage of a trial is a "fundamental right of each criminal defendant."  *Rushen v. Spain*, 464 U.S. 114, 117 (1983).  Nevertheless, due process does not require a defendant's presence where "there is no indication that [the defendant] 'could have done [anything] had [he] been at the [hearing] nor would [he] have gained anything by attending.'"  *Kentucky v. Stincer*, 482 U.S. 730, 747 (1987) (quoting *United States v. Gagnon*, 470 U.S. 522, 527 (1985)).

In Ground Two, above, Petitioner argued that the trial court erred in failing to instruct the jury on lesser-included offenses of theft and reckless manslaughter.  This Court found those claims meritless.  Thus, here, Petitioner has not shown that had he been present at the charge conference, he could have "done" or "gained" anything by being present.  *See Stincer*, 482 U.S. at 747.  This is because Petitioner's only argument that he was prejudiced by not being there, was that he was unable to request the lesser-included charges.  Therefore, Petitioner fails to establish that absent his counsel's alleged deficiency in waiving his presence, the result of the proceeding would have been different.  Because the Appellate Division decision was not contrary to nor involved an unreasonable application of federal law, this claim is denied.

3.  **Ground Five: Diminished Capacity Defense**

Petitioner next argues that his counsel erred in failing to pursue a defense of diminished capacity as a result of intoxication and drug use.  (ECF No. 1-2 at 23.)  In support of his claim, he

---

[5]    Petitioner raised this as a direct claim before the PCR court.  (ECF No. 10-16 at 29.)  The PCR Court procedurally barred the claim finding it should have been raised on direct appeal.  (ECF No. 10-20 at 4.)

explains that he "had an expert who was prepared to testify that the Petitioner had diminished capacity due to intoxication at the time the offense was committed."  (ECF No. 1-2 at 23.)

The Appellate Division, in affirming the denial of PCR, rejected the claim as follows:

> Sample further argues that trial counsel was ineffective for not pursuing a diminished capacity defense in light of the report of Dr. Robert L. Sadoff, M.D., and that the PCR court erred in finding that defendant was not prejudiced by trial counsel's failure to present the expert opinion evidence.  We do not agree.
>
> Because "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant[,]" *State v. Echols*, 199 N.J. 344, 358 (2009), "a heavy measure of deference [is applied] to counsel's judgments."  *Strickland, supra*, 466 U.S. at 691, 104 S. Ct. at 2066, 80 L. Ed. 2d at 695.  A strong presumption exists that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonably professional judgment."  *Id*. at 690, 104 S. Ct. at 2066, 80 L. Ed. 2d at 695.
>
> The PCR court rejected Sample's argument because the decision to forego a diminished capacity defense was sound trial strategy, and, relying upon *State v. Kotter*, 271 N.J. Super. 214 (1994), "voluntary intoxication does not give rise to a diminished capacity defense."  We agree with the latter determination because Dr. Sadoff's report, at most, painted a portrait of Sample as a "man who has been addicted to alcohol since age 12 and to crack cocaine since 1990."  Dr. Sadoff opined that Sample "was not legally insane at the time of the stabbing of his roommate, since he knew what he was doing and knew that it was wrong.  However, he lacked substantial capacity to control his behavior because of the intoxication with cocaine and alcohol."  Furthermore, the [report stated:]
>
>> [the] stabbing of Mr. Durham . . . occurred primarily as a result of Mr. Sample's addiction, his state of intoxication, both from the crack cocaine and from the alcohol, that his control system was diminished to the point that he did not control his behavior when he came home at about 4:00 a.m. and became angry and frustrated at his roommate.
>
> Sample cites no other evidence that his substance abuse would have lowered his culpability from purposeful or knowing conduct to

> recklessness.    Thus, a diminished capacity defense was not
> warranted, only an intoxication defense was called for, and the trial
> court gave an intoxication instruction to the jury.  Hence, Sample
> cannot demonstrate that trial counsel's conduct prejudiced him and
> that there was a reasonable probability that the result of the
> proceeding would have been different.

*Sample*, 2014 WL 1175166, at *5–6.

The Court finds that the Appellate Division decision rejecting this claim was not unreasonable under *Strickland*.  As an initial matter, "[t]he law does not require counsel to raise every available nonfrivolous defense."  *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009).  Here, the defense theory of the case was that the victim passed away from a heart attack, not the stab wound.  *See Strickland*, 466 U.S. at 681 ("Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."); *Hess v. Mazurkiewicz*, 135 F.3d 905, 908 (3d Cir. 1998) ("Our review of ineffective assistance of counsel claims does not permit us, with the benefit of hindsight, to engage in speculation about how the case might best have been tried.  We therefore accord counsel's strategic trial decisions great deference.")

Further, a review of Dr. Sadoff's report establishes that Petitioner was not legally insane at the time of stabbing, but committed the stabbing because he was "high on crack cocaine and intoxicated with alcohol" which caused him to act in a violent manner.  (ECF No. 10-24 at 149.) New Jersey's diminished capacity defense provides that "[e]vidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove that the defendant did not have a state of mind which is an element of the offense."  N.J. Stat. Ann. § 2C:4–2. However, "[i]ntoxication does not, in itself, constitute mental disease[.]"  N.J. Stat. Ann. § 2C:2–8c.  "'Intoxication' means a disturbance of mental or physical capacities resulting from the

21

introduction of substances into the body[.]" N.J. Stat. Ann. § 2C:2–8e(1); *see also State v. Reyes*, 658 A.2d 1218, 1229 (N.J. 1995) (finding that a diminished capacity defense is improper where defendant's actions were caused by intoxication).

Because Petitioner did not have a mental disease within the meaning of New Jersey law, he was not entitled to a defense of diminished capacity. Therefore, Petitioner cannot establish that his counsel was deficient under *Strickland* in failing to raise a defense of diminished capacity. Further, even if Petitioner's counsel was deficient in failing to pursue a diminished capacity defense, in light of the substantial evidence at trial, it is not reasonably probable that the result of the trial would have been different had the defense been presented. *See, e.g.*, *Jacobs v. Horn*, 395 F.3d 92, 109 (3d Cir. 2005) (rejecting *Strickland* claim for failure to present expert testimony of petitioner's mental disorders, because testimony would not have changed the outcome of trial due to witness testimony that petitioner admitted to the homicide). Accordingly, because the Appellate Division decision rejecting this claim was not an unreasonable application of *Strickland*, the claim is denied.[6]

### D. Ground Six: Ineffective Assistance of Appellate Counsel

In ground Six, Petitioner asserts that his appellate counsel was ineffective. (ECF No. 1-2 at 23.) He argues that his appellate counsel only raised three claims, and that Petitioner was forced to raise the remaining arguments on PCR, many of which were rejected as procedurally barred by the PCR court. (*Id.* at 24.)

---

[6]     In Petitioner's traverse, he appears to raise an additional ineffective assistance of counsel claim. Namely, that his counsel was ineffective in failing to request an evidentiary hearing before the court permitted the State to introduce evidence of his prior wrongs. (ECF No. 11 at 10.) Because there is nothing to indicate that even had the prior wrongs been excluded there is a reasonable probability the result of the proceedings would have been different, this claim fails under *Strickland*. 466 U.S. at 1083.

The Appellate Division, in affirming the denial of PCR, rejected the claim as follows:

> We lastly address the claim that Sample's appellate counsel was ineffective because she failed to raise multiple arguments on appeal. Sample posits that because his direct appellate contentions were limited to "challenges [to] his confession, sentence, and the State's proof of causation," *Sample*, *supra*, slip op. at 4, "it is clear that appellate counsel's efforts do not meet a standard of objective reasonableness." However, Sample does not establish, as required, that appellate counsel's decisions amounted to more than mere tactical strategy on appeal. *Strickland*, *supra*, 466 U.S. at 689, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694–95.
>
> The *Strickland/Fritz* paradigm applies to a defendant's claim of ineffective assistance of appellate counsel. *State v. Gaither*, 396 N.J. Super. 508, 513 (App. Div. 2007), *certif. denied*, 194 N.J. 444 (2008). An appellate attorney is not required to advance every argument a defendant urges, even if the argument is not frivolous. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 3313, 77 L. Ed. 2d 987, 994 (1983). Here, our independent canvass of the record convinces us that the contentions Sample now advances as reasonable appellate arguments would not have affected the outcome of the direct appeal. Accordingly, Sample cannot satisfy the prejudice prong of the *Strickland/Fritz* standard vis-à-vis appellate counsel.

*Sample*, 2014 WL 1175166, at *6.

Petitioner states that appellate counsel failed to raise the "issue of the omitted instructions for lesser-included offenses of theft and reckless manslaughter, the improper and prejudicial testimony permitted from Michael Covington, Sergeant Mastrangelo, Delores Durham, and Lieutenant Nagle, and the improper comments in the prosecutor's closing statement[.]"  (ECF No. 1-2 at 23.)  With the exclusion of the claim related to the prosecutor's closing statement, because all of the underlying claims have already been addressed on the merits by this Court, appellate counsel cannot be ineffective for failing to raise meritless claims.  *See, e.g.*, *United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000) (explaining, that if an underlying claim "is not meritorious . . . defendants can not successfully argue that counsel's failure to raise the claim on

direct appeal denied them their constitutional right of representation"); *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("a petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit").  Because a claim of ineffective assistance of appellate counsel should not be used as an end run to present an otherwise meritless claim on a habeas petition, this Court will deny those claims for habeas relief.

Regarding the prosecutor's summation, Petitioner has not shown that there is a reasonable probability that the outcome of the case would have been different had appellate counsel objected to the prosecutor's statements on summation.  *See Albrecht v. Horn*, 485 F.3d 103, 137 (3d Cir. 2007) (quoting *United States v. Mannino*, 212 F.3d 835, 840 n.4 (3d Cir. 2000) (explaining that ineffective assistance of appellate counsel is analyzed under the *Strickland* standard.)  In support of his claim, in his brief before the state court, Petitioner pointed to various statements made by the prosecutor which Petitioner alleged were either inaccurate, personal opinion, factually incorrect, or misstatements of the law.  (ECF No. 10-16 at 34–41.)  For example, he argued that the prosecutor inaccurately told the jury that Petitioner had previously stolen from the victim, the prosecutor repeated the alleged hearsay testimony, and the prosecutor misquoted what Petitioner told the police.  (*Id.*)

The Supreme Court has explained that a prosecutor's arguments on summation will only result in a constitutional violation if "the argument rendered the trial unfair."  *Darden v. Wainwright*, 477 U.S. 168, 179 (1986).  "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. . .[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Id.* at 181 (internal citations and quotation omitted).

24

First, the jury instruction at the conclusion of trial instructed the jury not to consider the State and defense counsel's summation as evidence.  (ECF No. 10-41 at 29–30.)  The jury is presumed to have followed this instruction.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  Second, given the substantial evidence at trial, Petitioner fails to show that had appellate counsel raised this claim on appeal, the result of the proceeding would have been different.  Accordingly, Petitioner is not entitled to relief on this claim.[7]

### E.  Ground Seven: Cumulative Errors

In Ground Seven, Petitioner argues that the cumulative errors at trial deprived him of due process.  (ECF No. 1-2 at 24.)  The Appellate Division, in affirming the denial of PCR, denied this claim as meritless, without comment.  *See Sample*, 2014 WL 1175166, at *3.  The PCR court rejected this claim, stating: "[f]or the above mentioned reasons, the court finds no merit to this argument."  (ECF No. 10-20 at 5.)

"Individual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process."  *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008) (citing *Albrecht*, 471 F.3d at 468).

Here, Petitioner has not shown that the cumulative errors by trial counsel rendered the trial fundamentally unfair.  For the reasons described earlier in this Opinion, the evidence against Petitioner was substantial.  He made an oral and audiotaped statement to the police indicating he had stabbed the victim.  Accordingly, this claim for habeas relief is denied.

---

[7]    Petitioner points to various statements made by the State on summation, which he argues were improper.  While the Court only cited to a number of them, the Court has reviewed them all. For the reasons explained above, the Court finds that Petitioner is not entitled to relief on these claims.

IV.    **CERTIFICATE OF APPEALABILITY**

Under 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Petitioner fails to make a substantial showing of the denial of a constitutional right, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

V.    **CONCLUSION**

For the reasons stated above, the Petition for habeas relief is DENIED and Petitioner is DENIED a certificate of appealability. An appropriate order follows.


Dated: June 14, 2018                                        s/Robert B. Kugler
                                                            Robert B. Kugler
                                                            United States District Judge